Filed 8/6/26  P. v. Jimenez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B343188 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA064071) |
| v. | |
| LUIS EDDIE JIMENEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Lisa S. Coen, Judge.  Affirmed.

Sabrina R. Damast for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Luis Eddie Jimenez (defendant) appeals the denial of his motion to vacate his conviction. (Pen. Code, § 1473.7, subd. (a).)[1] Because he has not met his burden of showing that he lacked a meaningful understanding of the immigration consequences of his plea, we affirm.

## BACKGROUND[2]

### I.   Facts

Defendant has been a lawful permanent resident of the United States since he was 20 days old. His mother and one of his two siblings are U.S. citizens, as are his wife and adult son. His other sibling is a lawful permanent resident.

In February 2001, defendant and another person were arrested during a traffic stop. The arresting officers recovered a total of 10.4 grams of methamphetamine from defendant's person and the car. Defendant "also had a scale and a pager and . . . baggies on his person[.]"

### II.   Charges; Plea; Sentencing

Defendant was charged with possession for sale of a controlled substance (Health & Saf. Code, § 11378; count 1) and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 2). The information also alleged that defendant had been convicted of three prior felonies. (§§ 470 (forgery), 487h (grand theft); Health & Saf. Code, §§ 11370.1 (possession of a controlled substance while armed), 11378 (possession for sale).)

---

[1]   All further statutory references are to the Penal Code unless otherwise indicated.

[2]   Because there was no preliminary hearing, we draw these facts primarily from the probation officer's report.

The prosecution's file reflects that, in March 2001, the prosecution offered defendant a plea deal of three years in state prison on count 1. Defendant countered with an offer for two years in state prison, which the prosecution denied. The prosecution's notes did not contain information about other plea offers made by either party.

Defendant chose to take the prosecution's offer and pled no contest to count 1. On his plea form, defendant initialed that he "underst[oo]d that if [he was] not a citizen of the United States, the conviction for the offense charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization[,]" and had discussed the charges, facts, possible defenses, and every item on the plea form with his attorney. Defendant's counsel averred that he "ha[d] explained each of the above rights to . . . defendant[.]"

At the plea hearing, the prosecutor advised defendant that "if [he was] not a citizen of the United States, [his] plea today will result in [his] deportation, denial of amnesty, denial of reentry, and denial of citizenship into the United States." Defendant indicated that he understood.

Pursuant to the terms of his plea, the trial court sentenced defendant to three years in state prison. The remaining charges and allegations were dismissed.

## III.   Section 1473.7 Motion; Ruling; Appeal

In April 2024, defendant filed a motion to vacate his conviction pursuant to section 1473.7, subdivision (a), arguing that the plea form's advisement that he "may" suffer adverse immigration consequences was insufficient because it did not inform him of the mandatory immigration penalties caused by his

3

plea.  In his declaration, defendant stated that "[t]he most important consideration in taking the plea was protecting [his] green card and remaining in the United States with [his] family[,]" and that he would have been willing to accept a more serious charge, more time in jail, or the risk of a jury trial to avoid jeopardizing his immigration status.

Defendant had two counsel during the plea proceedings. The first, Craig Purcell (Purcell), signed off on his plea form; the second, John Williams (Williams), represented him at the plea hearing. Defendant's current counsel did not contact Purcell or Williams to determine whether they advised defendant of the mandatory immigration consequences of his plea.  Defendant's counsel attempted to locate Purcell but found that he was "retired" and had "not updated his bar profile" with current contact information.  She contacted the public defender's office, which did not have "any further information about how to locate [Purcell]."  Defendant's counsel discovered that Williams's "last known address was the public defender's office in Yorba Linda" and that he had been "inactive from the bar for 14 years." Defendant's counsel made no further efforts to locate Purcell or Williams.

In October 2024, after hearing argument, the trial court denied the motion to vacate defendant's conviction.  Defendant timely appealed.

## DISCUSSION

### I.    Applicable Law and Standard of Review

A defendant who is no longer in custody may file a motion to vacate a conviction that "is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or

4

potential adverse immigration consequences of a conviction or sentence."  (§ 1473.7, subd. (a)(1).)  To show "prejudicial error" under section 1473.7, "a person need only show by a preponderance of the evidence: (1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) [prejudice, i.e., that] had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges."  (*People v. Mejia* (2019) 36 Cal.App.5th 859, 862 (*Mejia*).)

It is not enough for a defendant to simply declare that he would not have entered the plea had he understood it would require his deportation; he must provide objective evidence to corroborate such an assertion.  (*People v. Vivar* (2021) 11 Cal.5th 510, 530 (*Vivar*); *People v. Lopez* (2022) 83 Cal.App.5th 698, 715 (*Lopez I*).)  "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced."  (*People v. Espinoza* (2023) 14 Cal.5th 311, 321 (*Espinoza*).)

We independently review the denial of a section 1473.7 motion.  (*Vivar, supra*, 11 Cal.5th at p. 527.)  Where, as here, the trial court's factual findings " 'derive entirely from written declarations and other documents,' . . . no deference is owed" the trial court and " 'it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudic[ial] [error] under section 1473.7.' " (*Espinoza, supra*, 14 Cal.5th at p. 320.)

## II.     Analysis

Defendant has not shown that he did not meaningfully understand the immigration consequences of his plea.  The advisement in the plea form, which notified defendant that his conviction "may have" negative immigration consequences, is deficient.  (*People v. Patterson* (2017) 2 Cal.5th 885, 889; see also *Lopez I*, *supra*, 83 Cal.App.5th at p. 712 ["The advisement that [defendant] *may* face certain adverse immigration consequences was insufficient to inform [him] that the conviction would subject [defendant] to mandatory deportation and permanent exclusion from the United States."].)

However, at the plea hearing, the prosecutor orally advised defendant that his plea "will" result in deportation, denial of amnesty, denial of reentry, and denial of citizenship, and defendant said that he understood that consequence.  This colloquy establishes that defendant "meaningfully underst[oo]d" and "knowingly accept[ed]" the mandatory immigration consequences of his plea.[3]  (*Mejia*, *supra*, 36 Cal.App.5th at p. 861; contra *Espinoza*, *supra*, 14 Cal.5th at p. 320 [defendant demonstrated inability to meaningfully understand immigration consequences by showing he only received a "general advisement . . . that his conviction may have immigration consequences" and was "never advised . . . that pleading no contest to the charges at issue would result in his deportation"].)  The oral advisement also distinguishes the 2001 plea hearing from defendant's prior felony plea in 1998, at which he was

---

[3]     This conclusion renders moot defendant's alternative arguments.

6

advised that his conviction "could result in" negative immigration consequences.[4]

Defendant cites several cases in which appellate courts have reversed the denial of a section 1473.7 motion even when the court or prosecution orally advises the defendant about the mandatory immigration consequences of his plea. These cases establish that "depending on the surrounding circumstances[,]" an oral advisement "is not a categorical bar to relief" under section 1473.7. In them, the defendants provided evidence that their counsel had provided conflicting or inadequate advice which led the defendants to disregard or misunderstand the oral advisement. (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1175 (*Curiel*) [" 'A proper advisement by the court does not foreclose the possibility of relief *when counsel provides inaccurate or incomplete advice regarding immigration consequences.*' " (italics added)]; see also, e.g., *People v. Padron* (2025) 109 Cal.App.5th 950, 960–961 [the defendant established "error impeding [his] ability to understand and knowingly accept the consequences of his no-contest plea" by "attest[ing] his attorney did not inquire into his immigration status or discuss 'all of the immigration consequences of my conviction' " and proffering contemporaneous notes showing his public defender "advised only of unspecified, 'potential' immigration consequences"]; *People v. Lopez* (2021) 66 Cal.App.5th 561, 578 (*Lopez II*) ["both trial counsel and [defendant] agree there was no discussion of" mandatory immigration consequences, and the record showed that "trial counsel's review of the [plea] form with [the defendant] was . . . brief and pro forma"]; *People v. Camacho* (2019) 32 Cal.App.5th

---

[4]    The record does not contain a transcript of defendant's other prior felony plea hearings.

998, 1001–1003 [the defendant's declaration and his plea counsel's testimony showed that counsel never asked about the defendant's immigration status and led him to believe that if he avoided jail time he would avoid deportation].)

Defendant's appeal is distinguishable. Apart from his conclusory declaration that "[a]t the time . . . , [he] did not understand that taking the plea would guarantee the loss of [his] green card[,]" defendant provides no reason to believe that plea "counsel provide[d] inaccurate or incomplete advice regarding immigration consequences." (*Curiel, supra*, 92 Cal.App.5th at p. 1175; see also *People v. Carrillo* (2024) 101 Cal.App.5th 1, 17 ["A defendant's assertion as to his . . . state of mind is not accepted at face value by courts evaluating a section 1473.7 motion. Such assertions must be corroborated with objective evidence."].)

Defendant bears the burden of "show[ing] by a preponderance of the evidence" (*Mejia, supra*, 36 Cal.App.5th at p. 862) that an "error damag[ed] [his] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence" (§ 1473.7, subd. (a)(1)). Defendant has not done so here. His declaration is silent as to whether he was inadequately advised with regard to immigration consequences, or whether other "surrounding circumstances" caused him to misunderstand the clear oral advisement he was given at the plea hearing. (*Lopez II, supra*, 66 Cal.App.5th at p. 577.) And the absence of declarations from either of defendant's plea attorneys, while not itself fatal to his appeal, inures to his detriment. Absent claims of error or misunderstanding supported by objective evidence, we cannot overlook the clear oral advisement defendant received at the plea hearing.

8

Defendant raises two additional counterarguments. First, he argues that the oral advisement was defective because it did not specifically advise him that his conviction would "render[] him ineligible for adjustment of status, asylum, and cancellation of removal[,]" "subject[] him to mandatory immigration detention[,]" or cause him to be excluded from admission to the United States. Defendant cites, and we have found, no authority requiring an exhaustive advisement of every immigration consequence. (See *Lopez I*, *supra*, 83 Cal.App.5th at p. 712 [reversing denial of section 1473.7 motion where the advisement "was insufficient to inform [defendant] that the conviction would subject him to mandatory deportation and permanent exclusion from the United States"].) Defendant was advised that his conviction "will" result in deportation, denial of amnesty, denial of reentry, and denial of citizenship. This sufficiently informed defendant of the serious and mandatory immigration consequences of his plea. (See *People v. Gutierrez* (2003) 106 Cal.App.4th 169, 174 [advising the defendant that "he would be denied reentry" is functionally equivalent to advising that "he would be excluded from the United States."].)

Second, defendant argues that plea counsel erred by failing to pursue a negotiated plea to a greater offense with the same or greater sentence that would not have had immigration consequences. The record is unclear on this point, as it contains neither plea counsels' notes nor declarations regarding the negotiation process. And the prosecution's notes do not show amenability to an immigration-safe plea deal. The prosecution's rejection of defendant's counteroffer (for one fewer year in prison) could, as defendant argues, "indicate[] that the prosecution's priority was obtaining a lengthy prison sentence" and that a plea

to more prison time "would have been attractive to [the] prosecutor." But it does not necessarily demonstrate that the prosecution was open to pursuing alternative charges or an immigration-safe plea.

Defendant argues that the absence of evidence of any attempt to "plea upwards" supports his contention that his plea counsel never attempted to pursue an immigration-safe plea deal. However, the cases defendant cites for this proposition all involved affirmative evidence of plea counsel's failure to seek an immigration-safe plea. (See, e.g., *People v. Bautista* (2004) 115 Cal.App.4th 229, 237–238, 242 [defendant showed that he "may have been prejudiced by the [plea] attorney's failure to investigate, advise, and utilize defense alternatives" by, among other things, submitting a declaration from plea counsel that " '[t]he possibility [of seeking an immigration-safe plea deal] never entered [his] mind' " and he thus " 'never advised [the defendant] that an upward plea . . . would carry a stiffer prison sentence yet would not result in deportation' "; *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 908 [reversing denial of a section 1473.7 motion when the defendant's plea "counsel [did] not remember raising [defendant's] immigration status in plea bargaining, and her [contemporaneous] notes confirm this. Her notes and memory also confirm that she learned [defendant] was a legal permanent resident only when they discussed the consequences of the plea, after he stated he would take it, and after her counteroffers. This suggests that counsel failed to bargain creatively with the prosecution in a manner that considered immigration consequences."].) While defendant need not proffer the exact kinds of evidence submitted in *Bautista* or

10

*Manzanilla*, he must do something more than simply point to the absence of evidence of an immigration-safe plea offer.

Under the circumstances of this case, we conclude that defendant has not met his burden to prove that his conviction should be vacated under section 1473.7, subdivision (a).

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
GOORVITCH

We concur:


_____, Acting P. J.
CHAVEZ


_____, J.
RICHARDSON

11